1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

12

13

14

15

16

17

18

19

20

INDEPENDENT PARTY and WILLIAM
LUSSENHEIDE,

               Plaintiffs,

    v.

ALEJANDRO "ALEX" PADILLA, in
his official capacity as
Secretary of State of
California,

               Defendant.

CIV. NO. 2:16-00316 WBS CKD

MEMORANDUM AND ORDER RE: MOTIONS
FOR PRELIMINARY INJUNCTION AND
JUDGMENT ON THE PLEADINGS

----oo0oo----

21

22

23

24

25

26

27

       This suit was initiated by plaintiff Independent Party,
a political group headquartered in California seeking official
party qualification for the upcoming 2016 presidential general
election, and plaintiff William Lussenheide, a California
resident who wishes to express his support for the Independent
Party, against defendant Secretary of State Alejandro Padilla.[1]

28

---

      [1]    The court questions whether the Independent Party is a

1

1   Presently before the court are plaintiffs' motion for preliminary

2   injunction pursuant to Federal Rule of Civil Procedure 65,

3   (Docket No. 6), and defendant's motion for judgment on the

4   pleadings pursuant to Rule 12(c), (Docket No. 9).

5   I.   Factual and Procedural Background

6        On February 24, 2015, Charles Deemer, the state

7   chairman of the Independent Party, filed an official notice of

8   intent to qualify the Independent Party as a political body in

9   California with the Secretary of State pursuant to California

10  Election Code section 5001.  (Compl. at 4 (Docket No. 1); Deemer

11  Decl. ¶ 5 (Docket No. 6-2).)  On March 26, 2015, the Secretary of

12  State found that Independent Party's official notice did not meet

13  the requirements of section 5001 because the name Independent

14  Party is too similar to the name of an existing party, American

15  Independent Party.  (Compl. at 4; Deemer Decl. ¶ 6.)

16       In primary and general elections in California,

17  candidates may designate their party preference (or lack thereof)

18  on the ballot as long as they are affiliated with a "qualified"

19  political party.  Cal. Const. art. II, § 5(b).  Since Proposition

20  14 was enacted in 2010, however, candidates may not list the word

21  "Independent" in lieu of a party preference.[2]  The Independent

22  _____

23  proper plaintiff given that it is not a legal entity or even a
    qualified political party.  The court, however, will proceed with
    the motions before it because there is also a named individual
24  plaintiff, William Lussenheide.

25       [2]  Proposition 14 amended the California Constitution to
    replace a closed primary with an open nonpartisan primary leading
26  to a "top two" runoff general election.  Cal. Const. art. II,
    § 5; see also Rubin v. Padilla, 233 Cal. App. 4th 1128, 1137-39
27  (1st Dist. 2015) (describing the "top two" system).  "The
    candidates who are the top two vote-getters at a voter-nominated
28  primary election for a congressional or state elective office

                                  2

1   Party was created "to make it possible for candidates who wish to

2   be identified as 'independent candidates' to be able to run for

3   office with the label, 'Independent.'"  (Deemer Decl. ¶ 3; see

4   also Compl. at 1; Pls.' Mot. for Prelim. Inj. ("Pls.' Mot.") at 3

5   (Docket No. 6).)

6   II.  Preliminary Injunction

7          In order to obtain a preliminary injunction, the moving

8   party "must establish that he is likely to succeed on the merits,

9   that he is likely to suffer irreparable harm in the absence of

10  preliminary relief, that the balance of equities tips in his

11  favor, and that an injunction is in the public interest."  Winter

12  v. Natural Res. Def. Council, Inc., 555 U.S. 7, 21 (2008); Humane

13  Soc. of the U.S. v. Gutierrez, 558 F.3d 896, 896 (9th Cir. 2009).

14  As the Supreme Court has repeatedly recognized, injunctive relief

15  is "an extraordinary and drastic remedy, one that should not be

16  granted unless the movant, by a clear showing, carries the burden

17  of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997);

18  see also Winter, 555 U.S. at 22, 24.

19      A.    Likelihood of Success on the Merits

20         The right of individuals to associate for the

21  advancement of political beliefs and the right of qualified

22  voters to cast their votes effectively are protected against

23  federal and state encroachment by the First Amendment.  Williams

24  v. Rhodes, 393 U.S. 23, 30-31 (1968).  These rights, however, are

25  shall, regardless of party preference, compete in the ensuing
    general election."  Cal. Const. art II, § 5(a).  Political
26  parties may endorse or oppose candidates but cannot nominate
    them.  Proposition 14 left in place partisan primary elections
27  for presidential candidates, political party committees, and
    party central committees.  Id. § 5(c).

28

1  not absolute.  Burdick v. Takushi, 504 U.S. 428, 433 (1992).

2  "The Constitution provides that States may prescribe '[t]he

3  Times, Places and Manner of holding Elections for Senators and

4  Representatives,' and the Court therefore has recognized that

5  States retain the power to regulate their own elections."  Id.

6  (citing U.S. Const. art. I, § 4, cl. 1).  The Supreme Court has

7  "recognized that, 'as a practical matter, there must be a

8  substantial regulation of elections if they are to be fair and

9  honest and if some sort of order, rather than chaos, is to

10  accompany the democratic processes.'"  Anderson v. Celebrezze,

11  460 U.S. 780, 788 (1983) (citation omitted).  Any election system

12  "inevitably affects--at least to some degree--the individual's

13  right to vote."  Chamness v. Bowen, 722 F.3d 1110, 1116 (9th Cir.

14  2013) (citation and internal quotation marks omitted).

15        In examining challenges to state election laws based on

16  First and Fourteenth Amendment rights, the Supreme Court has

17  developed a flexible balancing standard: the court must weigh

18  "the character and magnitude of the asserted injury" against "the

19  precise interests put forward by the State as justifications for

20  the burden imposed by its rule," considering "the extent to which

21  those interests make it necessary to burden the plaintiff's

22  rights."  Anderson, 460 U.S. at 789.  When the constitutional

23  "rights are subjected to 'severe' restrictions, the regulation

24  must be 'narrowly drawn to advance a state interest of compelling

25  importance.'"  Burdick, 504 U.S. at 434 (citation omitted).

26  "Lesser burdens, however, trigger less exacting review," Timmons

27  v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997), and need

28  only be reasonably related to achieving the state's important

4

1    regulatory interests, <u>Rubin v. City of Santa Monica</u>, 308 F.3d

2    1008, 1014 (9th Cir. 2002).  "[W]hen a state election law

3    provision imposes only 'reasonable, nondiscriminatory

4    restrictions' . . . 'the State's important regulatory interests

5    are generally sufficient to justify' the restrictions."  <u>Burdick</u>,

6    504 U.S. at 434 (citing <u>Anderson</u>, 460 U.S. at 788).

7         For example, in <u>Timmons</u>, the Supreme Court found that

8    Minnesota's laws prohibiting a candidate from appearing on the

9    ballot as the candidate of more than one party did not impose a

10   severe burden.  520 U.S. at 364.  While the ban prevented the

11   plaintiff, a chapter of the New Party, from using the ballot to

12   communicate to the public its support for a particular candidate

13   who was already another party's candidate, the Court explained

14   that "[b]allots serve primarily to elect candidates, not as

15   forums for political expression."  <u>Id.</u> at 363.  The plaintiff and

16   its members were still free to communicate ideas to voters and

17   candidates by campaigning, endorsing, supporting, or voting for

18   their preferred candidate.  <u>Id.</u>  Further, the court found the

19   burdens were justified by the "correspondingly weighty" valid

20   state interests in avoiding voter confusion and maintaining

21   ballot integrity and political stability.  <u>Id.</u> at 369-70.

22        Similarly, in <u>Chamness</u>, the Ninth Circuit held that

23   California's prohibition against a primary candidate designating

24   himself as "Independent" on the ballot and requirement that he

25   instead be designated as having "No Party Preference" or leave

26   the space blank was not a severe burden on his First Amendment

27   rights.  722 F.3d at 1117.  The Ninth Circuit reasoned that this

28   change in the election code following the enactment of

1  Proposition 14 was viewpoint neutral as it "does not allow <u>any</u>

2  candidates to term themselves 'Independents' and does allow <u>all</u>

3  candidates to put themselves forward on the primary ballot and

4  gather votes." <u>Id.</u> at 1118.  Furthermore, the court emphasized

5  that the plaintiff's First Amendment rights were not inhibited

6  given that he was unable to identify a specific message he wished

7  to convey by using the designation "Independent" or explain how

8  that message was hindered.  <u>Id.</u> at 1117.  Lastly, the state had

9  "an important interest in managing its ballots" to avoid

10  questionable self-designations or case-by-case determinations

11  regarding the acceptability of various self-designations.  <u>Id.</u> at

12  1118-19.

13         In contrast, in <u>Anderson</u>, the Supreme Court found that

14  Ohio's early filing deadline for independent candidates not only

15  placed a significant burden on Ohio's independent-minded voters

16  but also on the nationwide electoral process because it was

17  enforced in the presidential election.  460 U.S. at 793-95.  The

18  Court explained that the filing deadline forced independent

19  candidates to enter the presidential race when the major party

20  nominations were just beginning and the major parties had not yet

21  adopted their platforms.  <u>Id.</u> at 790.  The deadline disadvantaged

22  independents by depriving them of the flexibility to act on

23  developments that might occur after the early filing deadline,

24  excluding any candidate who wished to enter the race after March,

25  and forcing independent candidates to gather signatures when the

26  election was remote and it was more difficult to secure

27  volunteers, contributions, and media publicity.  <u>Id.</u> at 791-92.

28  The court held that a "burden that falls unequally on new or

6

small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment." Id. at 793. Furthermore, the exclusion of candidates "burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens." Id. at 788. Not only was this burden severe but the Court also found the state's interests had no merit. Id. at 796-805; see also Ill. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 186 (1979) (reasoning that "an election campaign is a means of disseminating ideas as well as attaining political office" and holding that Illinois failed to state a compelling reason for requiring independent candidates and new political parties to obtain more signatures in city elections than in state-wide elections).

In order to qualify as a new political party under California Election Code section 5001, a group must elect temporary officers, designate a party name, and file notice with the Secretary of State declaring its intent to qualify. Cal. Code of Elec. § 5001. Section 5001 provides that the "designated name shall not be so similar to the name of an existing party so as to mislead the voters, and shall not conflict with that of any existing party or political body that has previously filed notice." Id. In this case, plaintiffs argue that defendant violated their First Amendment rights by wrongfully applying section 5001 and denying Independent Party's notice of intent to qualify as a political party due to the similarity between its

1   name and that of the American Independent Party.  Plaintiffs

2   contend that because "such vital individual rights are at stake,"

3   defendant must establish its denial was necessary to serve a

4   compelling state interest.  (Pls.' Mot. at 7.)

5          Although the failure to qualify as a political party

6   may be said to have imposed some burden on plaintiffs, the court

7   does not find it to be a severe burden on plaintiffs' First

8   Amendment rights.  As in Timmons and Chamness, members of the

9   Independent Party are still free to run for office,[3] campaign,

10  express their political ideas, and endorse other candidates.

11  While defendant's denial prevents candidates from having an

12  "Independent Party" designation on the presidential election

13  ballot, ballots serve to "elect candidates, not as forums for

14  political expression."  Timmons, 520 U.S. at 363.  Unlike the

15  plaintiffs in Anderson or Illinois State Board of Elections,

16  Independent Party candidates are not being excluded from the

17  ballot or prevented from expressing their political views through

18  election campaigns.  See Anderson, 460 U.S. at 788.  Defendant

19  even represents that it is possible for plaintiffs to become a

20  qualified political party under a different name that still

21

22          [3]   Any candidate for statewide, legislative, or
    congressional offices may be placed on the primary election

23  ballot by filing a declaration of candidacy and nomination paper
    with up to 100 voter signatures and paying a filing fee of 1% (2%

24  for United States Senator and statewide candidates) of the
    office's salary.  Cal. Elec. Code §§ 8060-62, 8103.  In lieu of a

25  filing fee, any candidate may submit a petition with 1,500 to
    10,000 signatures, depending on the office.  Id. § 8106.  A

26  candidate for the presidential general election may qualify for
    the ballot under the independent nomination process and will be

27  designated as "Independent" on the ballot.  Id. §§ 13105(c),
    8300.

28

8

1   includes the word independent.  (Def.'s Mot. for J. on the

2   Pleadings ("Def.'s Mot.") at 9 (Docket No. 9) ("Plaintiffs may

3   even use a name that includes the word 'independent' without

4   running afoul of Section 5001.  Indeed, the Secretary has

5   approved the name 'Independent California Party' for a political

6   body that is currently attempting to qualify for the 2016 general

7   election.").)  The court therefore finds that any burden imposed

8   on plaintiffs' right to associate or cast votes effectively is

9   not severe and hence does not demand heightened scrutiny.

10          The state also has important, if not compelling,

11  interests that justify the denial.  First, as defendant initially

12  expressed at the time of denial, the name Independent Party is so

13  similar to the name of the existing American Independent Party

14  that voters might be confused and misled.  Plaintiffs argue to

15  the contrary that having both the American Independent Party and

16  the Independent Party on the ballot would actually reduce voter

17  confusion because voters are currently mistaking American

18  Independent Party candidates for candidates who are independent

19  of any political group.  If both the American Independent Party

20  and the Independent Party were on the ballot, plaintiffs argue,

21  voters would be forced to research the differences between the

22  two groups before selecting a candidate.  This argument is

23  speculative at best, and any possible confusion about the

24  American Independent Party's name was an issue for the state to

25  consider <u>prior</u> to qualifying it as a political party and is not

26  relevant to the present case.

27          Second, California's Election Code provides that a

28  presidential candidate can be independently nominated for the

1    presidential general election "subsequent to, or by other means
2    than, a primary election," Cal. Elec. Code § 8300, and "[i]f a
3    candidate has qualified for the ballots by virtue of an
4    independent nomination, the word 'Independent' shall be printed
5    instead of the name of a political party," id. § 13105(c).  There
6    would therefore be significant risk of confusion if there is both
7    a presidential nominee of the Independent Party and a
8    presidential candidate who is independently nominated and thus
9    designated as "Independent" on the ballot pursuant to section
10   13105.  Voters would likely be unable to differentiate these two
11   distinct types of "Independent" candidates.[4]  Even if defendant's
12   initial explanation does not justify imposing a restriction on
13   plaintiffs' right to associate, especially given that defendant
14   approved the Independent California Party for the 2016
15   presidential election ballot despite its notably similar name to
16   the American Independent Party, (see Def.'s Mot. at 9), the
17   potential for confusion due both to the Independent Party's
18   similarity in name to other political parties and to the
19   designation used for independently nominated presidential
20   candidates is sufficient.

21        Plaintiffs also assert a "class of one" Equal
22   Protection claim under the Fourteenth Amendment.  See, e.g.,
23   Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (noting that the

24   _____

25        [4]   In their reply, plaintiffs argue that defendant could
     remedy this potential problem by designating an independently
26   nominated presidential candidate as an "independent candidate,"
     "non-partisan," "no party," "by petition," or "unaffiliated"
27   instead of as "Independent."  It is not, however, this court's
     place to mandate this sort of legislative amendment to section
28   13105(c) of California's Election Code.

                                   10

1    Court has recognized successful "class of one" equal protection

2    claims "where the plaintiff alleges that she has been

3    intentionally treated differently from others similarly situated

4    and there is no rational basis for the difference in treatment").

5    Plaintiffs argue that states have repeatedly recognized political

6    parties that have similar names or overlapping words in their

7    names.  (See Pls.' Mot. at 5 (listing cases)); see also Craig v.

8    Brown, 114 Cal. 480, 481 (1896) (permitting both the National

9    Democratic Party and the Democratic Party to be on the ballot).

10   For example, plaintiffs cite to former Secretary of State Debra

11   Bowen's approval in 2011 of Americans Elect even though the

12   American Independent Party was already on the ballot.  (Pls.'

13   Mot. at 6.)  Plaintiffs contend that this precedent demonstrates

14   the Independent Party is being treated differently from other

15   similarly situated political parties and that there is no

16   rational basis for this unequal treatment.

17         As discussed above, however, defendant does have a

18   strong rational basis for its denial: avoiding voter confusion

19   both with the American Independent Party and also with

20   independently nominated presidential candidates identified as

21   "Independent."  This case is distinguishable from the cases

22   plaintiffs cite because the ballot designation "Independent"

23   could not only cause voters to confuse the Independent Party with

24   the American Independent Party or the California Independent

25   Party but, more significantly, it could also cause voters to

26   mistake Independent Party candidates for independently nominated

27   presidential candidates, or vice versa.  The court therefore

28   finds that plaintiffs have failed to establish that they were

11

1   treated differently from similarly situated political groups.

2          Accordingly, the court must find that plaintiffs are

3   unlikely to succeed on the merits of their First Amendment right

4   to associate and cast votes effectively claims or Fourteenth

5   Amendment "class of one" claim.

6      B.      Irreparable Harm

7          Intangible injuries that are incapable of measurement

8   can constitute irreparable harm.  Rent-A-Center, Inc. v. Canyon

9   Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir.

10  1991).  The harm must be "likely" and not "merely speculative."

11  Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1058

12  (9th Cir. 2009).

13         Plaintiffs seek an injunction ordering defendant to

14  accept the Independent Party's notice of intent in time for it to

15  participate in the May 24, 2016 voter tally to determine whether

16  it has the support of the required 0.33% of registered voters or

17  needs to obtain additional support.  (Winger Decl. ¶ 4 (Docket

18  No. 6-1).)  If it cannot show it has the requisite number of

19  supporters by the July 8, 2016 registration deadline, the

20  Independent Party will not be able to have a designated

21  Independent Party presidential candidate on the 2016 ballot.

22  (Id.)

23         While plaintiffs could still attempt to independently

24  nominate a presidential candidate who would, pursuant to section

25  13105(c), be designated as "Independent" on the ballot, this is

26  not the same as having a party candidate run.  Moreover, the

27  hurdles for independently nominating a presidential candidate are

28  higher than those for qualifying a political party to participate

                                  12

1   in the general election--the independent presidential nomination

2   must be signed by 1% of registered voters (about 178,000 voters),

3   whereas a qualified political party needs only 0.33% of

4   registered voters (about 46,000 voters) to declare their

5   preference for the party.[5]   The court therefore finds that while

6   plaintiffs have failed to demonstrate a likelihood of prevailing

7   on their constitutional claims, they have established that they

8   will suffer irreparable harm if they cannot obtain political body

9   status in time for the May 24, 2016 tally and July 8, 2016

10   registration deadline.

11       C.        Balance of Equities

12           "In each case, courts 'must balance the competing

13   claims of injury and must consider the effect on each party of

14   the granting or withholding of the requested relief.'"   Winter,

15   555 U.S. at 24 (citation omitted).   If an injunction is issued,

16   the state's ability to regulate elections and minimize voter

17   confusion could be significantly impaired.   If the court declines

18   to issue an injunction, plaintiffs' constitutional rights will be

19           [5]      An independent nominee for president can attain ballot
20   status by having fifty-five candidates for presidential elector
     file a nomination paper with the Secretary of State stating the
     name of the candidate for president and vice president for whom
21   those electors pledge themselves to vote.   Cal. Elec. Code
     § 8303; see also "Summary of Qualifications and Requirements for
22   the Office of Presidential Elector, Independent Nomination,
     November 8, 2016 Presidential General Election," available at
23   http://elections.cdn.sos.ca.gov//statewide-elections/2016-
     primary/president-elector-independent-2016.pdf.   The nomination
24   papers must be signed by at least 1% of the statewide
     registration from the November 2014 general election, or 178,039
25   registered voters, and submitted by no earlier than April 29,
     2016 or later than 5 p.m. on August 12, 2016.   See Cal. Elec.
26   Code §§ 2187, 8400, 8403(a)(2).
           Each of the fifty-five electors must have completed a
27   declaration of candidacy and filed it with the county elections
     official of the county in which he or she is registered to vote
28   88 days prior to the election.   Id. § 8550.

1    only minimally burdened.  The balance of the hardships therefore
2    weighs against the issuance of an injunction.

3        D.    Public Interest

4            "'In exercising their sound discretion, courts of
5    equity should pay particular regard for the public consequences
6    in employing the extraordinary remedy of injunction.'"  Id.
7    (citation omitted).  "The public interest analysis for the
8    issuance of a preliminary injunction requires [the court] to
9    consider 'whether there exists some critical public interest that
10   would be injured by the grant of preliminary relief.'"  Indep.
11   Living Ctr. of So. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 659
12   (9th Cir. 2009) (citation omitted).  "Generally, public interest
13   concerns are implicated when a constitutional right has been
14   violated, because all citizens have a stake in upholding the
15   Constitution."  Preminger v. Principi, 422 F.3d 815, 826 (9th
16   Cir. 2005).

17           Because plaintiffs have failed to show a likelihood of
18   success on the merits of their First or Fourteenth amendment
19   claims and defendant has an important competing public interest
20   in avoiding voter confusion on the ballots and facilitating fair
21   elections, it is in the public interest to deny the injunction.

22       E.    Conclusion

23           Even though the court has found plaintiffs are likely
24   to suffer irreparable harm, plaintiffs have failed to satisfy the
25   other elements required by Winters to secure a preliminary
26   injunction.  Accordingly, because plaintiffs have failed to
27   establish that this extraordinary remedy is warranted, the court
28   must deny plaintiffs' motion for preliminary injunction.

1  III. <u>Judgment on the Pleadings</u>

2          "After the pleadings are closed--but early enough not

3  to delay trial--a party may move for judgment on the pleadings."

4  Fed. R. Civ. P. 12(c).  The standard governing a Rule 12(c)

5  motion is essentially equivalent to that which governs a Rule

6  12(b)(6) motion for failure to state a claim: the court must

7  accept all factual allegations in the complaint as true and

8  construe them in the light most favorable to the non-moving

9  party.  <u>Fleming v. Pickard</u>, 581 F.3d 922, 925 (9th Cir. 2009).

10  The court must determine whether the complaint's factual

11  allegations, together with all reasonable inferences, state a

12  plausible claim for relief.  <u>Cafasso, U.S. ex rel. v. Gen.

13  Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1054 (9th Cir. 2011)

14  (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)).  A "dismissal

15  can be based on either the lack of a cognizable legal theory or

16  the absence of sufficient facts alleged under a cognizable legal

17  theory."  <u>Sprint Telephony PCS, L.P. v. County of San Diego</u>, 311

18  F. Supp. 2d 898, 903 (S.D. Cal. 2004).  Because both Rule 12(c)

19  and Rule 12(b)(6) "motions are analyzed under the same standard,

20  a court considering a motion for judgment on the pleadings may

21  give leave to amend and 'may dismiss causes of action rather than

22  grant judgment.'"  <u>Id.</u> (citation omitted).

23          The court may consider only the pleadings, matters

24  incorporated by reference in the complaint, or matters of

25  judicial notice.  <u>Kaur v. Citibank, N.A.</u>, Civ. No. 1:13-01610

26  AWI, 2014 WL 3756136, at *2 (E.D. Cal. July 30, 2014).

27  "[J]udgment on the pleadings is improper when the district court

28  goes beyond the pleadings to resolve an issue; such a proceeding

1   must properly be treated as a motion for summary judgment." <u>Hal</u>

2   <u>Roach Studios, Inc. v. Richard Feiner and Co., Inc.</u>, 896 F.2d

3   1542, 1550 (9th Cir. 1990).  The court therefore does not rely on

4   Richard Winger's declaration, which plaintiffs attached to their

5   opposition, as it is not part of the pleadings or appropriate for

6   judicial notice.  Even were the court to consider it, it would

7   not alter the court's conclusions.  (<u>See</u> Winger Decl. (Docket No.

8   11-1).)

9          For all the reasons discussed above, accepting all

10  facts, including all reasonable inferences, in the light most

11  favorable to plaintiffs, plaintiffs have failed to establish that

12  their First and Fourteenth Amendment rights have been

13  significantly burdened or that they are plausibly entitled to

14  equitable relief.  Accordingly, the court must grant defendant's

15  Rule 12(c) motion and dismiss plaintiffs' Complaint with

16  prejudice.  While leave to amend should be "freely given when

17  justice so requires," Fed. R. Civ. P. 15(a)(2), a court may deny

18  leave "if permitting an amendment would prejudice the opposing

19  party, produce an undue delay in the litigation, or result in

20  futility for lack of merit," <u>Jackson v. Bank of Hawaii</u>, 902 F.2d

21  1385, 1387 (9th Cir. 1990).  Leave to amend in this case would be

22  futile as the court cannot conceive, and plaintiffs have not

23  suggested, any additional facts that plaintiffs might be able to

24  allege or establish to cure their defective constitutional

25  claims.

26          IT IS THEREFORE ORDERED that plaintiffs' motion for

27  preliminary injunction (Docket No. 6) be, and the same hereby is,

28  DENIED; and

1      IT IS FURTHER ORDERED that defendant's motion to

2  dismiss plaintiffs' Complaint (Docket No. 9) be, and the same

3  hereby is, GRANTED.  Plaintiffs' Complaint is hereby DISMISSED

4  WITH PREJUDICE.

5  Dated:  May 3, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17